·76,996 ·

STATE OF KANSAS, *Appellee,* v. RICHARD B. KELLY, *Appellant.*

(942 P.2d 579)

Opinion filed July 11, 1997.

*Randall L. Hodgkinson*, assistant appellate defender, argued the cause, and *Steven R. Zinn*, deputy appellate defender, and *Jessica R. Kunen*, chief appellate defender, were with him on the briefs for appellant.

*Mike Ward*, county attorney, *Morgan Metcalf*, deputy county attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Richard B. Kelly appeals his jury convictions of one count of aggravated battery of a law enforcement officer and one count of simple battery of a law enforcement officer, as well as his controlling sentence of 46 years to life imposed under the Habitual Criminal Act. The convictions arose from Kelly's alleged attack, while in prison, upon two correctional officers.

*Factual statement*

In October 1990, Kelly was convicted by a jury in Wyandotte County, Kansas, of three counts of aggravated assault. The trial court found that Kelly had been convicted in Missouri on March 23, 1989, of armed robbery and invoked the provisions of the Habitual Criminal Act to enhance Kelly's sentences for the crimes. Kelly was sent to the El Dorado Correctional Facility (EDCF).

Kelly was designated a special management inmate. He was housed in a segregation unit, cell block B, number 266. Segregation inmates are kept in their cells 23 hours a day and have no physical contact with other inmates. They receive meals in their cell and are allowed out of their cells only to shower and to go to the exercise yard.

Robert Sutton and Roger Noah were correctional officers working in cell block B at EDCF in 1992. Their duties included feeding the segregation inmates and taking them to the showers. An inmate is fed by having him place his hands on the window of the door to his cell while the officers unlock a small "bean hole," which folds down towards the officers. The inmate's food is slipped through the hole. When an inmate is moved from his cell, he places his

hands through the bean hole to be handcuffed. After his restraints are in place, the officers open the door to escort the prisoner to his destination. A reverse procedure is followed to remove the restraints when the inmate reaches his destination.

On December 20, 1992, officers Sutton and Noah took Kelly his evening meal. Kelly placed his hands on the window, but Sutton saw something between two fingers of Kelly's right hand. Sutton thought it was a razor blade wrapped in tape and told Noah not to open the bean hole. The officers informed their sergeant, and a "shakedown team" was sent to Kelly's cell to investigate. Nothing was found in Kelly's cell, although his mattress, which had a slit in it, was replaced.

The following day, Noah and Sutton were informed that after his shower, Kelly was to be transferred to cell 200, an observation cell. Kelly was taken from cell 266 and locked in the shower. After his request for a razor was denied, he simply stood in the shower without showering. Noah then went to cell 266 to take Kelly's belongings to cell 200.

The officers then restrained Kelly and escorted him to cell 200. Once inside, Kelly placed his hands through the bean hole to have his restraints removed. Using both hands, Noah put the handcuff key in the right lock and unlocked Kelly's right cuff. The officers testified that Kelly withdrew his right hand into the cell. Sutton's left hand grasped the empty right cuff.

Noah proceeded to put the key in the left cuff lock hole and turned it. He then saw Kelly's hand flash out twice and saw Sutton grab his hand and back up. Noah noticed blood splattering and looked down and saw he was also cut. Sutton saw Kelly's hand come out and hit his hand, then strike Noah. He saw what looked like yellow masking tape between Kelly's fingers. Noah heard Kelly say, "I got both them [expletive]," and heard the toilet flush.

EDCF officer James Manion, working in the control center, saw Kelly's hand come out of the bean hole and move across both officers' hands, then saw blood dripping. Manion also heard the toilet flush before he was able to shut off the plumbing.

After the officers were cut, an emergency alarm was called. Both officers were taken to a hospital for treatment. Noah suffered a 12

cm. long, deep laceration across the top of his right hand, which exposed, but did not cut, his tendons. Noah also received a 6 cm. long cut on his left wrist. His injuries required 12 interior stitches and 29 exterior stitches. The cut on Noah's wrist was very close to the radial artery, which if severed could have led to serious bodily injury or death. Sutton received a 10 cm. long cut on the back of his hand, which also exposed, but did not cut, the tendons. Four interior stitches and 15 exterior stitches sutured his cut. The clean edges of the cuts were consistent with a sharp instrument, such as a razor blade from a disposable razor. Although Sutton suffered a slight infection and both men retained scars from their injuries, they ultimately regained full use of their hands.

After the alarm, a shakedown team removed Kelly from his cell and searched it. No weapons were found in the cell or on Kelly's person following a strip search. Kelly was x-rayed, but no weapon was hidden inside his body.

Kelly was charged with two counts of aggravated battery against a law enforcement officer. At trial, the State was allowed to place in evidence a disposable BIC razor, a razor blade that had been removed from a BIC, and the remains of a BIC after the blade had been removed. Photographs of the inside of cell 266, where Kelly had been removed from, revealed the words "Kill guard" written on the walls. In addition, Sutton testified that prior to the cutting, Kelly had made statements telling them how fast he was. Noah testified that Kelly had said Noah would pay for depriving him of his meal the day before the incident.

Kelly testified on his own behalf. He denied the photographs were of cell 266 and claimed he made no such statements to Sutton and Noah. Kelly testified that as Noah was unlocking the cuffs, Sutton used his left hand to hold on to Kelly's right hand. Sutton reached down with his right hand to pick up a piece of metal that had fallen off of some leg irons, and then he jerked back. Then Kelly saw blood, shook off the unlocked cuffs, and dropped them outside the bean hole. Kelly denied cutting the officers or actually seeing them get cut, but thought that the cuts had to have been caused "whenever Sutton made that move and turned off, what-

ever, you see what I'm saying, it had to come from there." Kelly also denied flushing his toilet.

The court instructed the jury on all alternative means of committing aggravated battery against a law enforcement officer and the lesser included offense of battery against a law enforcement officer. The court also gave a deadly weapon and great bodily harm instruction.

The jury found Kelly guilty of aggravated battery against Officer Noah and battery against Officer Sutton. Kelly moved for a new trial or judgment of acquittal on the grounds that the jury returned an inconsistent verdict and that no evidence supported the aggravating circumstances. These motions were denied.

Kelly was sentenced to 1 to 5 years for the battery conviction and 15 years to life for the aggravated battery conviction, both sentences to run consecutive to each other and his prior sentence. At sentencing, the court applied the Habitual Criminal Act, K.S.A. 21-4504(b), and found that the State, by submitting the journal entry of judgment for Kelly's 1990 Kansas felony convictions (which included a finding that Kelly had been convicted in Missouri of armed robbery in 1989), had properly proved Kelly had two prior felony convictions. The court then enhanced Kelly's aggravated battery sentence to a term of 45 years to life.

Kelly appeals his convictions and enhanced sentence pursuant to K.S.A. 22-3601(b)(1), raising five issues.

*Sufficiency of the evidence*

Kelly first argues the record is insufficient to support his conviction for aggravated battery against Noah. Kelly asserts the facts do not indicate that Noah suffered great bodily harm or disfigurement. He also claims the State failed to produce any evidence of a deadly weapon in this case. He makes the additional argument that the record must reveal evidence of all three of the alternative means of committing aggravated battery in order to support a conviction, citing *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994).

The aggravated battery statute in effect at the time of the crime, K.S.A. 21-3414 (Ensley 1988), provided:

"Aggravated battery is the unlawful touching or application of force to the person of another with intent to injure that person or another and which either:

    (a) Inflicts great bodily harm upon him; or

    , (b) Causes any disfigurement or dismemberment to or of his person; or

    (c) Is done with a deadly weapon, or in any manner whereby great bodily harm, disfigurement, dismemberment, or death can be inflicted."

## The amended information charged in Count II:

"That in Butler County, Kansas, on or about the 21st day of December, 1992, Richard B. Kelly, a person in the custody of the Secretary of Corrections (El Dorado Correctional Facility Inmate #52978), did then and there unlawfully touch or apply force to the person of Roger L. Noah, a Correctional Officer engaged at the time in the performance of his official duty, with the intent to injure Roger L. Noah, and which either: (a) inflicted great bodily harm upon him; or (b) caused any disfigurement or dismemberment to him; or (c) was done with a deadly weapon (sharp instrument of some kind), or in any manner whereby great bodily harm, disfigurement, dismemberment, or death could be inflicted."

## In stating our standard of review of this issue, we have said:

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Knighten*, 260 Kan. 47, Syl. ¶ 1, 917 P.2d 1324 (1996).

In addition, appellate courts look only to the evidence in favor of the verdict to determine if the essential elements of a charge are sustained. *State v. Pratt*, 255 Kan. 767, 768, 876 P.2d 1390 (1994).

As the information in this case alleged alternative means of committing a crime, we must consider the rule set forth in *State v. Timley*, 255 Kan. 286. We recently stated:

" 'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to the guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means.' *State v. Timley*, 255 Kan. 286, Syl. ¶ 1, 875 P.2d 242 (1994).

" ' "In reviewing an alternative means case, the court must determine whether a rational trier of fact *could* have found each means of committing the crime proved beyond a reasonable doubt." ' 255 Kan. at 289 (quoting *State v. Kitchen*, 110 Wash. 2d 403, 420, 756 P.2d 105 [1988])." *State v. Crane*, 260 Kan. 208, 230, 918 P.2d 1256 (1996).

We hold that the evidence in this case, when viewed in the light most favorable to the prosecution, could have supported a finding of guilt for any of the alternative means of committing aggravated battery. Evidence was presented to show great bodily harm as well as disfigurement, as Noah's previously described injuries required extensive suturing and resulted in permanent scarring. The wounds were caused by a dangerous weapon which could have severed the radial artery and resulted in "great bodily harm, disfigurement, dismemberment, or death."

In defining great bodily harm in *State v. Dubish*, 234 Kan. 708, 715-16, 675 P.2d 877 (1984), we declared:

"The word 'great' distinguishes the bodily harm necessary in this offense from slight, trivial, minor or moderate harm, and as such it does not include mere bruises, which are likely to be sustained in simple battery. Whether the injury or harm is great or not is generally a question of fact for the jury. [Citation omitted.]"

Noah's injuries consisted of no mere bruising, nor were they superficial grazes or cuts. They required several internal as well as numerous external stitches to repair the damage. We have no difficulty concluding that sufficient evidence existed to support this means of committing aggravated battery.

We found that a scar on the head hidden by the victim's hair was sufficient for disfigurement in *State v. Chandler*, 252 Kan. 797, 850 P.2d 803 (1993), and said: "When an injury has been established, whether it is a disfigurement under K.S.A. 21-3414(b) is a fact question to be determined by the trier of fact. Disfigurement should be considered in the ordinary sense." 252 Kan. at 804. Clearly, Noah's scars provide substantial evidence to support a finding of disfigurement.

The evidence also could have indicated that the injuries were committed with a deadly weapon, as some type of sharp instrument was used in a manner that obviously was capable of causing death or serious bodily injury. See *State v. Bowers*, 239 Kan. 417, Syl. ¶ 1, 721 P.2d 268 (1986). Additionally, the evidence clearly supports a finding that the injuries were inflicted in a manner whereby great bodily harm, disfigurement, dismemberment, or death could have been inflicted. Thus, substantial evidence supports each alternative means of committing aggravated battery.

Further, there is a logical reason for the discrepancy in the verdicts stemming from the attacks on the two different officers. The evidence reveals the injuries to Noah were more severe than the injuries to Sutton, particularly because he received two different cuts. In addition, one of Noah's cuts came dangerously close to severing a major artery. Thus, there is evidence from which a jury could have decided that the attack on Noah resulted in great bodily harm or disfigurement or was done in a manner whereby great bodily harm, disfigurement, or death could have been inflicted, even though it apparently concluded that the attack on Sutton did not have such a result or was not performed in such a manner. Based on this evidence, a rational factfinder could have found Kelly guilty beyond a reasonable doubt of aggravated battery on Noah.

*Deadly weapon instruction*

The trial court gave the jury the following deadly weapon instruction: "The definition of a deadly weapon for purposes of the aggravated battery statute is an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury." Citing *State v. Bowers,* 239 Kan. 417, Kelly requested the addition of the language: "In cases of aggravated battery, the alleged victim's perceptions of the instrument used are irrelevant." The trial court refused to add this language to the instruction.

We review jury instructions under the following standard:

" 'Jury instructions are to be considered together and read as a whole without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous.' [Citation omitted.]" *State v. Hunt,* 257 Kan. 388, 392, 894 P.2d 178 (1995).

In other words, we should approve the instructions if the instructions properly and fairly state the law as applied to the facts of the case considered as a whole, and if they could not reasonably mislead the jury. *State v. Butler,* 257 Kan. 1043, 1065, 897 P.2d 1007 (1995).

We do not find that the omission of the requested language is significant, given the instructions as a whole, or that the instructions given could have reasonably mislead the jury. The deadly weapon instruction as given did not misstate the law. *State v. Hanks,* 236 Kan. 524, 537, 694 P.2d 407 (1985) (citing Black's Law Dictionary 487 [4th ed. rev. 1968]) (defining deadly weapon for purposes of aggravated battery the same as the instruction given here).

Kelly is correct that an objective test applies to determine whether a deadly weapon was used in aggravated battery cases, as opposed to a subjective test applied in aggravated robbery cases. *Bowers,* 239 Kan. at 422. However, Kelly's proposed language may have misled the jury in this case because it might have made the jury think the victim's observations are irrelevant. This is not the case. The victim's observations are certainly relevant; only the victim's feelings about those observations are irrelevant. The statement advocated by Kelly, that the "victim's perceptions of the instrument used are irrelevant" does not accurately convey the test that should be used, which is better stated in the comment to PIK Crim. 3d 56.18, Aggravated Battery: "The determination of whether the object was a deadly weapon is made on an objective basis rather than subjectively from the victim's point of view."

Finally, even if the refusal to add the requested language was improper, any error was certainly harmless. We have said: " 'Errors that do not affirmatively cause prejudice to the substantial rights of a complaining party do not require reversal when substantial justice has been done.' " *State v. Johnson,* 255 Kan. 140, 148, 871 P.2d 1246 (1994) (quoting *State v. Peltier,* 249 Kan. 415, 426, 819 P.2d 628 [1991], *cert. denied* 505 U.S. 1207 [1992]).

*Failure to give multiple counts instruction*

Kelly asserts the trial court erred in failing to give PIK Crim. 3d 68.07, Multiple Counts—Verdict Instruction, although he concedes he did not request the instruction. The instruction provides:

"Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge. The defendant may be

convicted or acquitted on any or all of the offenses charged. Your finding as to each crime charged must be stated in a verdict form signed by the Presiding Juror."

Regarding our standard of review of this issue, we noted in *State v. Pierce*, 260 Kan. 859, 868, 927 P.2d 929 (1996):

"No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of the objection unless the instruction is clearly erroneous. K.S.A. 22-3414(3).

"An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there is a real possibility the jury would have returned a different verdict. *State v. Deavers*, 252 Kan. 149, 164-65, 843 P.2d. 695 (1992), *cert. denied* 508 U.S. 978 (1993)."

Kelly argues that because it was error to give an instruction that differed from PIK Crim. 2d 68.07 in *State v. Macomber*, 244 Kan. 396, 405-06, 769 P.2d 621, *cert. denied* 493 U.S. 842 (1989), *overruled on other grounds State v. Rinck*, 260 Kan. 634, 923 P.2d 67 (1996), it must constitute clear error to fail to give the instruction at all.

In *Macomber*, however, the defendant objected to the instruction eventually given to the jury. Thus, the standard of review applied in *Macomber* differed from the clearly erroneous standard we utilize here.

Although the multiple-count instruction should have been given in this case, we cannot find that the failure to give the instruction was clearly erroneous. Here, the jury was given separate verdict forms for each count, and it is clear the jury weighed the evidence for each count separately in reaching its verdicts.

The evidence in this case would only support a finding that Kelly attacked both Sutton and Noah, or neither of them. As the jury plainly decided that Kelly perpetrated the attack, it was left to decide whether aggravating factors were present in both counts. The jury obviously independently weighed the evidence in order to conclude that an aggravated battery was committed against Noah, while only a simple battery was committed against Sutton. The jury clearly considered the aggravating factors separately for

each count, despite the court's failure to specifically instruct the jury to do so.

There appears to be no real possibility that the jury would have rendered a different result had the multiple-count instruction been given. As such, the failure to give the instruction is, at its worst, harmless error as we have previously described. The failure to give the instruction set forth in PIK Crim. 3d 68.07 cannot be deemed clearly erroneous.

*Admission of razors and blades*

Kelly next argues that the court should not have allowed the prison-issue razors and blades to be admitted into evidence for demonstrative purposes. He claims the State failed to show any connection between the razors that were admitted and the alleged crimes.

We review the trial court's admission of this evidence under the abuse of discretion standard. Regarding the admission of physical evidence, in *State v. Bornholdt,* 261 Kan. 644, 659, 932 P.2d 964 (1997) (quoting *State v. Sexton,* 256 Kan. 344, 353, 886 P.2d 811 [1994]), we stated:

" 'Subject to certain exclusionary rules, the '[a]dmissibility of physical evidence is within the sound discretion of the court and is to be determined by the court on the basis of its relevance and its connection with the accused and the crime charged.' *State v. Beard,* 220 Kan. 580, Syl. ¶ 3, 552 P.2d 900 (1976). In *State v. Ji,* 251 Kan. at 15, we said:

'[W]hen a physical object is offered into evidence and a question arises as to its connection with either the defendant or the crime charged, unless it is clearly irrelevant, the object should be admitted for such weight and effect as the jury sees fit to give it.'

"We have at times stated that evidence may be admissible which does not constitute a portion of the crimes charged, but which has a natural, necessary, or logical connection to the crime. *State v. McClanahan,* 254 Kan. 104, 116, 865 P.2d 1021 (1993)."

Relevant evidence is defined as " ' "evidence having any tendency in reason to prove any material fact." [Citations omitted]. The determination of relevancy is a matter of logic and experience, not a matter of law. [Citation omitted.]' " *State v. Friberg,* 252 Kan. 141, 147, 843 P.2d 218 (1992).

The evidence objected to was clearly relevant in that inmates have access to such blades and testimony indicated that a very sharp item, consistent with such a blade, caused the wounds. The blades were also consistent with the item Sutton thought he saw Kelly holding both the day before the attack and during the attack. The admission of the blades may have had the logical tendency to prove how Kelly could have committed the crimes, even if they were not the exact item used to cause the officers' injuries.

As these items were clearly relevant, they were properly admitted for such weight as the jury deemed fit to give them. The trial court did not abuse its discretion in admitting these items, and this point has no merit.

*Proof of prior felony conviction*

For his final point, Kelly claims that, as a matter of law, the trial court could not apply collateral estoppel to establish his prior Missouri conviction under the Habitual Criminal Act. We have unlimited review of questions of law. *State v. Brady,* 261 Kan. 109, Syl. ¶ 1, 929 P.2d 132 (1996).

Kelly frames his argument in terms of the requirements of K.S.A. 1992 Supp. 21-4504(f), which states: "A judgment may be rendered pursuant to this section only after the court finds from competent evidence the fact of former convictions for felony committed by the prisoner, in or out of the state." The question is whether a previous finding of a prior conviction satisfies the "competent evidence" requirement of the provision, which is governed by K.S.A. 60-465(4). See *State v. Strickland,* 21 Kan. App. 2d 12, 900 P.2d 854 (1995).

In this case, a certified copy of the journal entry of judgment in Kelly's previous Wyandotte County case was admitted into evidence. The journal entry showed the Wyandotte County convictions and further stated:

"4. That on the 20th day of December, 1990, a hearing was held before the Honorable Daniel A. Duncan on the State's motion to invoke the provisions of the Habitual Criminal Act pursuant to K.S.A. 21-4504. The State presented evidence in the form of Journal Entry of Judgment and oral testimony from Officer Graham in regard to the following prior conviction:

(a) On the 23rd day of March, 1989, defendant was convicted of the crime of Armed Robbery, a felony, in the court of Jackson County, Missouri, in case number CR89-1059.

After considering the above matters the Court sustained the State's motion."

In *State v. Fisher*, 233 Kan. 29, Syl. ¶ 4, 661 P.2d 791 (1983), we indicated: "Under the rule of collateral estoppel, when an issue of ultimate fact has once been determined by a valid and final judgment that issue cannot again be litigated between the same parties in any future lawsuit."

We see no reason why this rule should not be followed regarding prior convictions if all the elements of collateral estoppel are met. When a judgment is rendered that includes a finding of a prior conviction for purposes of the Habitual Criminal Act, a defendant may challenge whether that finding is supported by competent evidence. However, once that finding is final, a presumption of regularity attaches to that finding. *State v. Patterson*, 262 Kan. 481, 939 P.2d 909 (1997). No purpose would be served in allowing the defendant to later relitigate that same issue. See *Justice V. Board of Wyandotte County Comm'rs*, 17 Kan. App. 2d 102, 109, 835 P.2d 692, *rev. denied* 251 Kan. 938 (1992) ("Determinations of fact, unappealed from, are final and conclusive.").

We have often set forth the requirements of collateral estoppel: (1) a prior judgment must have been entered on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment. *In re Estate of Beason*, 248 Kan. 803, 813, 811 P.2d 848 (1991).

In the present case, all the requirements of collateral estoppel regarding the Missouri conviction have been met. A prior judgment on the merits applied the Habitual Criminal Act based upon the factual finding that Kelly had a prior conviction from Missouri. The parties are the same or in privity. The issue of the prior conviction was necessary to invoke the provisions of the Habitual Criminal Act for Kelly's 1990 convictions.

Kelly primarily disputes the existence of the first element as to whether the finding of the prior conviction was one of ultimate fact. He relies on our decision in *State v. Loudermilk*, 221 Kan. 157, 557 P.2d 1229 (1976), that a finding of a prior conviction for sentencing purposes was not a fact to be decided by the jury as the ultimate factfinder. Kelly argues that this means a finding regarding a prior conviction is not one of "ultimate fact" which can be applied in a later case through collateral estoppel.

Kelly's argument regarding *Loudermilk* is flawed, as that case considered an entirely different issue. The issue of who must make a finding does not affect whether that finding is one of ultimate fact. Thus, the *Loudermilk* opinion has no bearing upon whether a finding of a prior conviction may be subject to collateral estoppel.

The journal entry of judgment sustaining invocation of the Habitual Criminal Act, dated February 25, 1991, indicated the State presented evidence in the form of a journal entry of judgment and oral testimony regarding the prior Missouri conviction. The journal entry does not state whether this evidence was competent pursuant to 60-465(4). However, there is no showing that Kelly objected to or challenged this finding at that time. Thus, the finding is final and conclusive and should be regarded as competent to establish a prior conviction pursuant to 21-4504(f).

Affirmed.