NOT DESIGNATED FOR PUBLICATION

No. 126,048

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NICHOLAS A. COX,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Johnson District Court; TIMOTHY P. MCCARTHY, judge. Submitted without oral argument. Opinion filed August 2, 2024. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: Nicholas A. Cox was convicted of aggravated battery for acts committed against his ex-wife, K.K. He now timely appeals the denial of his K.S.A. 60-1507 motion following an evidentiary hearing. Cox claims the district court erred when it failed to find his defense counsel was ineffective for failing to secure evidence and investigate potential witnesses to attack the credibility of his victim. After our careful and thorough review, the evidence reflects defense counsel was not ineffective but made strategic decisions the best he could, given Cox's demands. We find no error in the denial of Cox's motion and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

The full factual and procedural background underlying Cox's conviction and sentence was set forth in Cox's direct appeal and need not be repeated here. Relevant to the issue before us, in 2015, Cox was convicted by a jury of aggravated battery, a severity level 4 person felony, for acts committed against K.K. in October 2011. The jury made a finding, for purposes of the State's motion for upward departure at sentencing, that Cox posed a future danger to society based on his history of violent crimes. The district court granted the State's upward departure motion based on the jury's findings and sentenced Cox to 208 months of imprisonment. Cox's conviction and sentence were upheld on direct appeal. *State v. Cox*, No. 112,711, 2016 WL 3655869, at *1 (Kan. App. 2016) (unpublished opinion).

In August 2018, Cox timely filed a pro se K.S.A. 60-1507 motion after his conviction became final. After a series of delays, Cox retained counsel, who filed an amended K.S.A. 60-1507 motion. That motion alleged Cox's defense counsel was ineffective for (1) failing to obtain and investigate text messages between Cox and K.K. prior to the incident, which, contrary to K.K.'s trial testimony, allegedly showed the two had resumed a romantic relationship; and (2) failing to investigate potential witnesses who could establish the alleged relationship between Cox and K.K.

The district court held a full evidentiary hearing on Cox's motion in November 2021, wherein it heard testimony from Cox; defense counsel; K.K.; K.K.'s ex-boyfriend and his current wife; and Cox's ex-girlfriend. After hearing the testimony and arguments, the district court took the matter under advisement and issued a written order denying Cox's motion.

We begin, however, by emphasizing that this case is not about whether Cox battered K.K. There is no dispute he did. The issues are whether he was guilty of the

2

severity level of aggravated battery charged under K.S.A. 2011 Supp. 21-5413(b)(1)(A) (knowingly causing great bodily harm or disfigurement) and whether the evidence was sufficient to justify an upward departure in his sentence for future dangerousness as determined by the jury. Cox's defense was always that although he inflicted the injuries alleged, he did not do so knowing they would cause great bodily harm. In fact, he argued he did not inflict great bodily harm at all. The victim, he claimed, was exaggerating the extent of her injuries. He asked the jury to consider him guilty of either simple battery or a lesser form of aggravated battery which required that he knowingly caused harm to K.K. in a manner where great bodily harm could be inflicted. See K.S.A. 2011 Supp. 21-5413(b)(1)(B). The jury was instructed on all three charges.

ANALYSIS

*Standard of Review*

We review a district court's decision after an evidentiary hearing on claims of ineffective assistance of counsel to determine if the district court's factual findings are supported by substantial competent evidence. We review the district court's legal conclusions based on those facts applying a de novo standard of review. *State v. Evans*, 315 Kan. 211, 218, 506 P.3d 260 (2022).

Claims of ineffective assistance of defense counsel are analyzed under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the defendant must show trial counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different. *Evans*, 315 Kan. at 218.

To establish trial counsel's deficient performance under the first prong, Cox must show his defense counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort be made to "'eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" 315 Kan. at 218. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell "'within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, [counsel's] action "might be considered sound trial strategy."'" *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

Under the second prong, Cox must show with reasonable probability his defense counsel's deficient performance caused him prejudice—that is, defense counsel's conduct affected the outcome of the proceedings. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Evans*, 315 Kan. at 218. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the jury. *Khalil-Alsalaami*, 313 Kan. at 486.

*Defense Counsel Was Not Ineffective*

Cox argues his defense counsel was ineffective because he did not investigate text messages between Cox and K.K. that would have confirmed he and K.K. were in an ongoing relationship and did not call certain witnesses who would have testified Cox and K.K. appeared to be in a romantic relationship before the battery. He claims the text messages and testimony would have called into doubt K.K.'s credibility and supported his position that her injuries and their ongoing effects were not as severe as she claimed. Ultimately, Cox contends defense counsel should have investigated the evidence to

4

impeach K.K.'s credibility, and, if properly done, the jury would not have found K.K.'s injuries constituted great bodily harm and would not have found he presented a future danger to society. We are unpersuaded by Cox's arguments.

K.K. testified that she and Cox were not in a romantic relationship. Cox claims they were and, by defense counsel not retrieving text messages from K.K.'s cellphone, the jury was not able to fully assess her credibility. It is unclear how evidence suggesting Cox and K.K. were in a romantic relationship at the time of the battery would have any relevance. Whether they were in a relationship had no bearing on any element of the charged offense or its severity level. See K.S.A. 2011 Supp. 21-5413(b). It appears Cox is arguing that K.K.'s exaggeration of her injuries affected the jury's ability to evaluate her truthfulness and her denial of their relationship made him appear more dangerous than he actually was.

But the record does not support Cox's claim that the jury was unaware K.K. might not have been truthful. K.K. testified during the trial she and Cox were not in a romantic relationship at the time. Defense counsel asked her to confirm her position in cross-examination that Cox would come over to watch the children until she got home and would then leave, further signifying there was no ongoing relationship. K.K. also told the investigating detective that she and Cox were not in a romantic relationship. Yet after the detective reviewed the hospital records, it became clear K.K. had had a sexual encounter with Cox around the time of the battery. K.K. later called the detective, and the detective again asked K.K. about her relationship with Cox. K.K. admitted she had lied. She said her mother was in the room during the hospital interview and she did not want her mother to know she had reestablished a relationship with Cox. In cross-examining the detective, defense counsel emphasized the fact K.K. had lied to the detective and—just as Cox reported to police at the time—they had a romantic relationship.

5

The record also reflects that even though defense counsel did not cross-examine K.K. directly about her lie, nor did he call a multitude of witness to confirm her lie, he did get the information in a more effective way—through the detective who caught K.K. in the lie and confronted her about it. Under these facts, the record reflects defense counsel made strategic decisions about what witnesses to call and how to cross-examine the State's witnesses. "Strategic choices by counsel after a thorough investigation of law and facts are generally unchallengeable." *State v. Buchanan*, 317 Kan. 443, 457, 531 P.3d 1198 (2023). Defense counsel's failure to obtain text messages showing a romantic relationship—when that fact was established by other witnesses—did not constitute deficient performance and was, in fact, sound trial strategy.

*No Evidence Suggests K.K. Exaggerated Her Injuries*

Cox's second claim of ineffectiveness was his defense counsel did not call witnesses at trial who could have testified that K.K.'s injuries were not as bad as she claimed; thus, his crime was not the intentional infliction of great bodily harm or disfigurement.

First, defense counsel did call witnesses to suggest K.K.'s injuries were not as bad as she was claiming. One witness testified he saw K.K. in the same month before the battery and after the battery and he did not notice anything unusual about her appearance. Another witness said she had contact with K.K. several times after the battery and K.K. never complained about her injuries. And a third witness testified K.K. never mentioned being in any pain and never exhibited a scar. Defense counsel also cross-examined K.K. about whether her claims of panic attacks were new or simply a manifestation of prior treatment for panic attacks and whether her anemia caused easy bruising.

Defense counsel also called a forensic pathologist to downplay the severity of K.K.'s injuries—describing them as horrible but temporary. He called K.K. to the stand to

establish she had exaggerated her injuries so she would not lose her children in a pending child in need of care proceeding. Defense counsel tried to suggest K.K.'s injuries were just superficial bruising and the fact she was released from the hospital to go home about a week later showed she was not hurt that badly; in fact, she looked significantly better when released.

K.K.'s neighbors' trial testimony reflected her face was so badly injured and swollen they did not recognize her when she crawled to their house for help after the battery. She had to be taken to the hospital by ambulance and had trouble even lying down comfortably while waiting for the ambulance in her neighbors' home. The medical evidence admitted at the trial showed K.K. sustained fractures to three lumbar vertebrae. As a result, she was hospitalized for about a week and needed extensive assistance from the hospital staff as she recuperated. She also had a permanent scar on her face from a cut she sustained during the battery.

Although K.K. testified about the lasting impact of her injuries, K.K.'s subjective perception of how and to what extent her injuries affected her is of little import in light of the record as a whole. Whether she complained later of pain or whether she had a visible scar or disfigurement were largely irrelevant.

The jury saw videos and photographs taken in the hospital following the battery. It did not have to rely on what others said; it could observe physical effects of the battery K.K. suffered—vertebral fractures and the scar on her face—at the hands of Cox. As the fact-finder, the jury accepted the evidence of K.K.'s injuries and found the injuries inflicted on K.K. constituted great bodily harm. See *State v. Kelly*, 262 Kan. 755, 761, 942 P.2d 579 (1997). And defense counsel testified that given these injuries and the extensive photographic and medical evidence, it was going to be "hard to move the jury off those pictures."

7

Failure by defense counsel to do more than he did, which was extensive, to downplay the extent of K.K.'s injuries did not constitute deficient performance and was, in fact, sound trial strategy. Because the evidence does not support a finding of ineffectiveness of counsel, we need not reach the prejudice prong. See *Strickland*, 466 U.S. at 694.

*The Evidence Supports the Jury's Finding Cox Was a Future Danger to Society*

The jury's finding that Cox represented a future danger to society was supported by substantial competent evidence, given his decision to testify and his extensive criminal history reflecting previous acts of battery against K.K. Although Cox mentions this issue as part of his claim of ineffectiveness of counsel, he does not point to any evidence other than what we have addressed above. Thus, we deem the claim waived or abandoned for failure to support. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021) (issues not adequately briefed deemed waived or abandoned).

Affirmed.