234 Kan. 969 (1984)
676 P.2d 757
STATE OF KANSAS, Appellee,
v.
RODNEY L. BROWN, Appellant.
No. 55,557
Supreme Court of Kansas.
Opinion filed February 18, 1984.
Craig D. Cox, of Halstead, argued the cause and was on the brief for appellant.
James W. Modrall, county attorney, argued the cause, and Robert T. Stephan, attorney general, was with him on the brief for appellee.
The opinion of the court was delivered by
MILLER, J.:
Defendant Rodney Brown appeals from his conviction of murder in the first degree, K.S.A. 21-3401, following a jury trial in Harvey District Court. Three issues are raised: Whether the verdict is supported by sufficient evidence; whether an eyewitness identification instruction was required; and whether admitting the testimony of a court services officer constituted reversible error.
When the sufficiency of the evidence to support a criminal conviction is challenged, the standard to be employed by an appellate court is: Does the evidence, when viewed in a light most favorable to the prosecution, convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? See State v. Pham, 234 Kan. 649, Syl. ¶ 8, 675 P.2d 848 (1984); State v. Voiles, 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979); and Jackson v. Virginia, 443 U.S. 307, 319, 61 L.Ed.2d 560, 99 S.Ct. 2781 (1979). In the majority opinion in Jackson, Justice Stewart said:
"[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Johnson v. Louisiana, 406 U.S., at 362. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's *970 role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." (Emphasis in original.) 443 U.S. at 319.
We will proceed to state the relevant facts disclosed by all of the evidence, considered in the light most favorable to the prosecution.
At about 8:15 o'clock a.m., on November 5, 1981, Mrs. Marguerite Wickersham arrived at the Econ-O-Wash laundromat in Newton, Kansas. As she waited for traffic to pass before she turned into the parking lot beside the building, Mrs. Wickersham looked through the laundromat windows and saw Mrs. Naomi Elizabeth Inghram, with whom she was acquainted. Mrs. Inghram was standing near a man wearing brown clothes. Both were inside the laundromat at the rear, near the bathroom. Mrs. Wickersham proceeded to pull into the lot, parked her car, and entered the laundromat. Inside, she did not see either Mrs. Inghram or the man in brown. She did see a bucket of clothes spilled on the floor, a laundry cart with clothes draped on it, and a woman's purse and coat unattended on a chair. Mrs. Wickersham put her clothes in a washer, inserted her money, and started her laundry. She was concerned about Mrs. Inghram so she walked back to the restroom and said, "Do you need help?" She did not get any answer and after a few minutes she said, "Are you all right?" and a man's voice answered, "Yes." Mrs. Wickersham went back to the main laundry room and shortly thereafter the owner, Mr. Dan Chase, walked in through the front door, the only entrance to the building. She told Mr. Chase about her worries. While emptying the coin boxes, Mr. Chase saw a fresh drop of blood on one of the tables. He then went down the hall to the bathroom and called, "Are you all right?" Again a male voice responded, "Yes." Chase then called the police. Shortly thereafter, and before the police arrived, Mrs. Wickersham and another woman who had finished her laundry left.
About 9:00 a.m., Officer William Smith of the Newton police department arrived. After observing the purse and the spilled bucket of clothes, he went back to the restroom and asked if the occupant was okay and received an affirmative response from a man. Officer Smith told the occupant that if he wasn't out in three minutes the officer would force his way into the room. The officer then went outside and checked the tag on one of the cars *971 and found it to be registered to a Kenneth Inghram of Newton. He reentered the building, went back to the bathroom and told the occupant that if he wasn't out by the count of five he, Officer Smith, would kick the door down. The toilet was flushed twice and then the door opened and the defendant emerged. His face was very flushed, and he was perspiring heavily. He was wearing a brown jumpsuit and carrying a sweater, and there was blood on both garments. Later, defendant's jacket was found in one of the washers. The officer could see the body of Mrs. Inghram sitting on the sink. He arrested the defendant. After the arrest, he placed defendant on the floor, and Mr. Chase put the officer's handcuffs on him. Defendant was then taken to a chair, and the officer returned to the bathroom to observe Mrs. Inghram. He detected no movement. Her face was purple and swollen. There was blood on at least two walls of the room. Other officers were called and the coroner's office was notified.
The deputy coroner found a tightly-knotted scarf around the victim's neck. She had been beaten and strangled. Her cricoid cartilage had been fractured. She had a laceration on the back of her head, which the coroner believed was made by a semi-sharp instrument, and she had numerous lacerations on the front of her head. The deputy coroner concluded that death was caused by asphyxiation due to strangulation. He examined the body sometime around 9:30 and ascertained that death had occurred about an hour earlier. The defendant's hands were clean, as if they had been recently washed. The deputy coroner took fingernail scrapings, and tests upon those scrapings showed that blood was present under the fingernails. He saw no evidence of scratches, bruises or welts, and no recent skin trauma to the defendant's face, hands, arms or body.
The day before his arrest, defendant had been released from custody on a DUI charge in Harvey County. He was placed on probation, reported to a court services officer, and left that officer about 4:30 o'clock p.m., stating that he was going to catch a bus to Hutchinson where he had an uncle. However, he spent the night of November 4, 1981, in Newton.
Defendant testified in substance that he entered the laundromat at 8:07 a.m. on the morning of November 5. He noticed a coat and purse on a chair. He went back to the restroom and found it occupied. He later opened the door and found the victim sitting *972 on the sink with a bandana tied around her neck. He tried to resuscitate her, and in the process got blood on himself. He came out, saw two ladies in the laundromat, got scared because he was all bloody, and returned to the restroom to hide. He had no relatives in Hutchinson, and did not tell the officer that he did.
We now return to the first issue: Was there sufficient competent evidence to support the verdict?
Defendant was charged with murder in the first degree, pursuant to K.S.A. 21-3401, which defines murder in the first degree as "the killing of a human being committed maliciously, willfully, deliberately and with premeditation...." The evidence clearly shows that the severely beaten victim was killed by strangulation. There was evidence that the accused or a man similarly dressed was seen with the victim moments before she vanished into the restroom. There is no indication that any man other than the defendant was present, no indication that anyone else could have committed the offense and left the building without being detected by the defendant or other patrons, no evidence of any sort indicating that any other person was present. The defendant was in the restroom with the victim moments after she was last seen alive. He remained in the restroom with her for thirty to forty-five minutes and did not emerge until required to do so by the officer. He had blood all over his clothing, including the back of his collar, and he had blood under his fingernails. This evidence is sufficient to support a finding that the defendant killed the victim.
From the way in which death was inflicted, from the fact that no provocation whatsoever was shown, and from the further fact that the defendant bore no bruises, scratches or other indications of an attack upon his person, the factfinder could well have determined that the killing was done maliciously, willfully and without just cause or excuse. See State v. Egbert, 227 Kan. 266, 606 P.2d 1022 (1980).
There were signs of a struggle  an overturned laundry bucket, an abandoned purse and coat, drops of blood on a table  all of which strongly suggest that the victim was assaulted in one portion of the laundromat and then taken into the restroom where further activity would be unseen by customers or passers-by. There was evidence that the victim was rendered helpless by a beating and then brutally strangled. This evidence *973 was fully sufficient to support a finding of deliberation and premeditation. As we said in State v. Hill, 233 Kan. 648, 664 P.2d 840 (1983):
"In a prosecution for murder the law does not presume or imply the existence of premeditation and deliberation from any state of circumstances, but it is not necessary that they be established directly. Premeditation and deliberation may be inferred from the established circumstances of the case, provided the inference is a reasonable one. In such case, the jury has the right to make the inference." 233 Kan. 648, Syl. ¶ 4.
The evidence showing that the assault began in the public area of the laundromat, that the victim had suffered lacerations to the front and back of her head, and that the scarf was knotted so tightly that it crushed her voice box is sufficient to allow a reasonable factfinder to determine that the killing was done willfully and intentionally.
Defendant points out some minor inconsistencies in the State's case, but these are matters for jury argument, not matters which we need to consider on appeal. The evidence was fully sufficient to support a verdict and judgment of murder in the first degree.
Defendant next contends that an eyewitness identification instruction was required. We disagree. The customer, Mrs. Wickersham, did not make an identification of the defendant. When she looked through the window, she saw a man in brown clothing standing near the victim at the rear of the laundromat. Defendant admits that he is the same person who emerged from the tiny restroom and who reported to the probation officer on the afternoon before the homicide. A liquor store operator testified that he sold a small bottle of liquor to the defendant on the day before the killing, but that testimony was certainly not crucial to the prosecution's case and did not tend to identify the defendant as the murderer. There was no issue as to identity. No request was made at trial for an eyewitness identification instruction, and if one had been made it should have been denied. This issue is totally without merit.
Finally, defendant contends that the trial court erred in allowing the court services officer to testify as to defendant's state of mind without proper foundation or knowledge to express such an opinion. The court services officer, who interviewed the defendant on the afternoon before the homicide, merely testified that he was not sure if the defendant totally understood what he *974 was being told, and that the defendant "just seemed to be off in another world." These were mere observations of the officer to the effect that the defendant seemed preoccupied and distant. Such testimony is not an expression of expert opinion, but is based upon observations commonly made by persons everywhere. We find no error. Both expert and lay testimony are competent on questions of mental capability, and there are many cases in which we have held that a non-expert who has had the opportunity to observe a person may express an opinion as to that person's mental capability.
The judgment and the conviction are affirmed.