NOT DESIGNATED FOR PUBLICATION

No. 112,368

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEREMY D. FRAZIER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed April 15, 2016. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Susan Alig*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., ATCHESON, J., and WALKER, S.J.

WALKER, J.: Jeremy D. Frazier appeals from his jury conviction of the aggravated battery of his ex-girlfriend. For the reasons stated below, we affirm.

FACTS

Frazier placed an early morning call to his ex-girlfriend, Renita Reeves, asking for help in moving a car he was trying to sell which was parked on property they co-owned down the street from her mother's house. Reeves agreed to help, hoping it might make Frazier quit calling her so much.

When Frazier arrived to pick up Reeves, Frazier saw a hickey on her neck as she got into the car. Frazier immediately began yelling and demanding that Reeves give him her phone. After he went through her phone and saw some pictures that angered him, Frazier broke the phone and snapped the SIM card in half. According to Reeves, Frazier's demeanor turned "[d]evilish," and he began to physically attack her. During the attack, Frazier punched Reeves in the head several times. He also tossed her around inside of the car, pinning her against the dashboard with his knee jammed into her stomach. Reeves testified that she could not breathe and asked him to stop, but Frazier continued to choke and punch her.

Frazier then threw Reeves into the back seat of the car, where he wrapped antenna wire around her neck and said, "I'm gonna kill you, I'm gonna kill you." After dragging Reeves outside the car, Frazier continued to punch and kick her. He slammed her on the trunk, threw her to the ground, and tried to stab her with a fork. The beating continued with Frazier hitting, kicking, punching, and slamming Reeves on the ground, all while Frazier tried to muzzle her screams for help. At some point, Frazier bit Reeves on the hand.

Reeves' mother, who was inside her house on the phone, eventually heard Reeves scream, so she came outside to investigate. She found Reeves crying and visibly shaken as she was trying to get up off the ground beside the car in the driveway. Reeves was not breathing normally and told her mother that her stomach hurt and she thought Frazier had "busted her nose."

After observing her daughter's condition, Reeves' mother called 911. An ambulance took Reeves to the emergency room at Kansas University Medical Center. Once there, Reeves complained of pain in her abdomen and ribs, and difficulty opening her mouth due to pain in her jaw. The emergency room doctor noted scratch marks around her neck, swelling on the right side of her face, a bite mark on her hand, a fracture

2

to her sinus cavity, a fracture to her orbital rim which was pushed in, and a grade 3 (out of 6) laceration to her liver. As a result of her injuries, Reeves spent the first day and a half of her 3-day hospital stay in ICU.

At the time of trial, Reeves testified she still suffered lingering effects of her injuries. She stated she was only just beginning to regain the ability to taste and feel on the right side of her face, which she had lost for the first year due to nerve damage. There was still a clicking sound when she chewed. Reeves had also lost strength in her hand, which often swelled, and told the jury she was expected to suffer lifelong problems with her collapsed sinus cavity.

Frazier's defense at trial was a general denial. He contended that "none of the injuries ever existed, not a single laceration, not a single fracture, this is all fabricated . . . ." During cross-examination and in closing arguments, Frazier tried to suggest that Reeves either exaggerated or made up the events to get back at him for dating someone else. He also speculated that her story was fabricated because of a dispute over a couple houses that Frazier and Reeves jointly owned.

The jury viewed the videotaped testimony of Yvonne Moss, a mutual friend of Reeves and Frazier. Moss testified that shortly after the events at issue, an angry Frazier called her and told her he had "beat [Reeves'] A-S-S" and "'effed her up,'" only he actually used the words "ass" and "fucked up."

The jury also heard redacted recorded jail phone calls made by Frazier. In one call, he stated that he "'didn't know [he] hurt her that much." In another call, Frazier described how he would make it "real difficult and real hard on" Reeves if she did not pay him his share of the market value of their home.

3

Following the jury's guilty verdict, the trial court denied Frazier's motion for a new trial and imposed a standard presumptive sentence of 71 months' imprisonment. Frazier has filed this timely direct appeal from his conviction.

ANALYSIS

In his first issue, Frazier argues the trial court erred by denying his request for a jury instruction on the lesser included offense of simple battery. Frazier also contends for the first time that the trial court erred by failing to *sua sponte* instruct the jury on all other lesser degrees of aggravated battery.

Our Supreme Court recently summarized the various steps an appellate court takes in reviewing allegations of instructional error and the corresponding standards of review:

> "When analyzing jury instruction issues, we (1) determine whether the issue can be reviewed, (2) determine whether any error occurred, and (3) finally determine whether any error requires reversal. [Citations omitted.]
>
> "The first and third steps are interrelated in that whether a party has preserved an issue for review will have an impact on the standard by which we determine whether an error is reversible. [Citation omitted.] If a party preserves a jury instruction issue by raising an appropriate argument before the trial court, there are no reviewability problems: We will determine whether there was an error and, if so, ask whether it was 'harmless.' [Citations omitted.]
>
> "On the other hand, if, as in this case, a party fails to preserve an objection to the jury instructions by not raising the argument before the trial court, we will still review whether the instruction was legally and factually appropriate but will reverse only for 'clear error.' [Citation omitted.] An instruction is clearly erroneous when "'the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred."' [Citations omitted.]" *State v. Barber*, 302 Kan. 367, 376-77, 353 P.3d 1108 (2015).

4

In this case, we must deal with issues concerning both kinds of jury instructions mentioned in *Barber*: the simple battery instruction requested by Frazier's counsel at trial and denied by the court, as well as the other lesser degrees of aggravated battery not sought at trial but raised for the first time by appellate counsel.

Appellate review of the legal appropriateness of jury instructions is unlimited. See *State v. Armstrong*, 299 Kan. 405, 432, 324 P.3d 1052 (2014). To the extent that other standards apply, they are discussed below in the analysis of the parties' arguments on appeal.

K.S.A. 2011 Supp. 21-5413(a)(1) defines simple battery as "[k]nowingly or recklessly causing bodily harm to another person." The State does not seriously dispute that the simple battery jury instruction and jury instructions on the lesser degrees of aggravated battery would have been legally appropriate. See *State v. Simmons*, 295 Kan. 171, 175, 283 P.3d 212 (2012) (recognizing "misdemeanor battery is a lesser degree of the crime of severity level 4 felony aggravated battery"); *State v. McCarley*, 287 Kan. 167, 177-78, 195 P.3d 230 (2008) (stating that lower degrees of aggravated battery are lesser included offenses of higher degree aggravated battery). The parties' disagreement here lies in whether the instructions were factually appropriate.

Our Supreme Court recently reiterated the test this court applies in reviewing allegations of instructional error at this step:

> "A defendant is entitled to instructions on the law applicable to his or her defense
> theory if there is sufficient evidence from which a rational factfinder could find for the
> defendant on that theory. An appellate court views the evidence that would support that
> instruction in a light most favorable to the defendant. [Citation omitted.] '"For a lesser
> included offense to be factually appropriate, there must be actual evidence in the record,
> together with reasonable inferences to be drawn from that actual evidence, that would

5

reasonably support a conviction for the lesser included crime."' [Citations omitted.]" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

In denying Frazier's request for an instruction on simple battery, the trial court concluded there was no evidence that would support giving of that instruction given the nature of Reeves' injuries. That is, the trial court found the evidence showed that Reeves' injuries were indisputably "great bodily harm," as opposed to "bodily harm." See *State v. Kelly*, 262 Kan. 755, Syl. ¶ 2, 942 P.2d 579 (1997) ("In defining great bodily harm, the word 'great' distinguishes the bodily harm necessary for aggravated battery from slight, trivial, minor, or moderate harm, and as such it does not include mere bruises, which are likely to be sustained in simple battery. Whether the injury or harm is great or not is generally a question of fact for the jury.").

In arguing the trial court erred in not instructing the jury on simple battery, Frazier contends the evidence viewed in a light most favorable to him shows Reeves suffered only "moderate" injuries, such as bruises and scratches. Thus, he claims the question of whether the bodily injury or harm to Reeves was great should have been presented as a question of fact for the jury to decide. The State disagrees and urges this court to affirm the trial court's ruling.

As noted in *Kelly*, Kansas law is clear that whether great bodily harm has been caused is usually a question for the jury. *State v. Green*, 280 Kan. 758, 765, 127 P.3d 241 (2006). Our courts have observed that a great many harms can be caused to a body, and people have different tolerances for pain and injury. Because of this, it is very difficult to define exactly what great bodily harm may be, and our courts prefer to leave this determination to a jury. In fact, our Supreme Court has provided only a general definition—distinguishing great bodily harm "from slight, trivial, minor or moderate harm," and not including "mere bruises"—and has generally left juries alone to work

6

within these broad guidelines. See *State v. Dubish*, 234 Kan. 708, 715-16, 675 P.2d 877 (1984) (distinguishing great bodily harm from lesser harm).

Exceptions to this general rule of deference to jury consideration exist. Our appellate caselaw is peppered with cases where the victim's injuries were deemed great bodily harm as a matter of law. In *State v. Williams*, 295 Kan. 506, 523, 286 P.3d 195 (2012), our Supreme Court seemed concerned with, but did not specifically disapprove of, cases that "muddled" what the court deemed the "seemingly straightforward proposition" that "whether a victim has suffered great bodily harm is a question of fact for the jury to decide." In that regard, the *Williams* court cited the following decisions: *State v. Moore*, 271 Kan. 416, 420-21, 23 P.3d 815 (2001) (holding burns and scarring from hot iron on victim's legs, breast, and inner thighs constituted great bodily harm as matter of law); *State v. Valentine*, 260 Kan. 431, 435, 921 P.2d 770 (1996) (holding that bullet wound which severed spinal cord and caused paralysis constituted great bodily harm as matter of law); *State v. Gideon*, 257 Kan. 591, 614, 894 P.2d 850 (1995) (holding that rape or aggravated criminal sodomy constituted great bodily harm as matter of law); *Doolin v. State*, 24 Kan. App. 2d 500, 503-04, 947 P.2d 454 (1997) (holding that bullet wound which required hip bone and hip socket to be replaced constituted great bodily harm as matter of law).

In this case, evidence of the injuries Frazier caused to Reeves comes from two sources: the initial observations of the emergency room treating physician, Dr. Mark Scott, about his findings on the actual day of the injuries; and from Reeves herself. When Reeves came to the emergency room, Dr. Scott observed swelling on the right side of her face, small scratch marks on her neck, a couple of small puncture wounds and what appeared to be a bite mark on her left hand, and some tenderness over the right abdominal wall into the rib. A CT scan of Reeves' head revealed one fracture to her sinus cavity and bleeding within the sinus. That scan also revealed another fracture to the orbital rim under one eye which was pushed in. A CT scan of her abdomen showed a

7

grade 3 (out of 6 grades) laceration of her liver resulting in bleeding which was not internal but stayed within the capsule around the liver. Dr. Scott testified that these injuries were caused by blunt force trauma. He was particularly concerned about her liver laceration and the fractures. He testified that some of the bones in these facial areas are easy to break and some take more force, but Reeves' fractures were in the area that is more difficult to break.

At the emergency room, Reeves was given morphine for her pain and fluids in case surgery would be needed. She was in the hospital for 3 days, half of which was in ICU.

Finally, the evidence was undisputed that Reeves suffered substantial lasting effects from her injuries. She could not taste or feel on the right side of her mouth and there was a clicking sound when she chewed. She had limited strength in her hand, which also throbbed and swelled. She was not able to use one hand for lifting. She suffered from sinus problems that she did not have before the beating, and she will have them for the rest of her life.

A careful examination of our appellate decisions reveals that cases involving the existence of broken bones and internal injuries have not established a bright-line rule for when a particular set of injuries becomes great bodily injury as a matter of fact beyond dispute. Not every case of broken bones can automatically be classified as great bodily injury. See *State v. Vessels*, No. 96,421, 2008 WL 1847374 (Kan. App.) (unpublished opinion) (spiral fracture of victim's forearm does not necessarily constitute great bodily injury; victim was never asked about lasting effects of her injury), *rev. denied* 286 Kan. 1185 (2008); *State v. Quinones*, No. 93,848, 2006 WL 995374 (Kan. App. 2006) (unpublished opinion) (trial court was correct that whether a broken cheekbone and fractured sinus constituted great bodily harm was a jury question).

Likewise, the absence of injuries involving a physical invasion of the body does not automatically rule out the existence of great bodily harm. See *State v. Dixon*, 279 Kan. 563, 574-76, 112 P.3d 883 (2005) (great bodily injury was clearly established where one of victim's metacarpal bones in his hand was broken, resulting in job loss, receipt of disability benefits, and requirement of light-duty work).

After examining the facts of this case, it is clear to us that there was no error in the district court's determination that a simple battery instruction was not factually appropriate. The combination of broken bones, internal injuries, stabbing, and strangulation, followed by substantial lasting trauma can lead to no other conclusion than Frazier inflicted great bodily harm upon Reeves. See *State v. Moore*, 271 Kan. 416, 420-21, 23 P.3d 815 (2001) (no reasonable jury could have found injuries to have constituted only moderate harm when burn marks from an iron remained visible 9 months after defendant's attack and some marks may have been permanent). In addition, even if it was factually appropriate, we find that no reasonable jury could conclude Reeves' injuries were anything less than great.

This conclusion does not end our inquiry. Kansas law requires that a district judge must instruct the jury not only as to the crime charged but also as to all lesser included crimes of which the defendant might be found guilty. This duty arises whether the defendant requested the lesser included instruction at trial. See *State v. Cordray*, 277 Kan. 43, 54, 82 P.3d 503 (2004). But where, as here, Frazier did not request an instruction for a lesser included offense, there is no error unless failure to give the instruction is "clearly erroneous." In other words, we must not only find that the instructions were in error, but also that the error was so clear that we are firmly convinced that there is a real possibility the verdict would have been different had the correct instruction or instructions been given. See *State v. Conway*, 284 Kan. 37, 46-47, 159 P.3d 917 (2007).

9

Frazier also argues for the first time on appeal that "the record would have supported an intermediate finding between moderate harm (simple battery) and the great bodily harm charged."

As Frazier notes in his brief, there are many forms of aggravated battery. Under pertinent portions of K.S.A. 2011 Supp. 21-5413(b), aggravated battery can be any of the following:

- knowingly causing great bodily harm to another person or disfigurement of another person (a severity level 4, person felony);
- knowingly causing bodily harm to another person with a deadly weapon, or in a manner whereby great bodily harm, disfigurement, or death can be inflicted (a severity level 7, person felony);
- knowingly causing physical contact with another person when done in a rude, insulting, or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement, or death can be inflicted (a severity level 7, person felony);
- recklessly causing great bodily harm to another person or disfigurement of another person (a severity level 5, person felony); or
- recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement, or death can be inflicted (a severity level 8, person felony).

(Other portions of the aggravated battery statute refer to injuries related to driving under the influence of alcohol and/or drugs and are not germane to this case.)

The charge against Frazier in this case was based upon the first option— knowingly causing great bodily harm to Reeves. In light of our holding that the facts in this case establish that great bodily harm was clearly incurred by Reeves, we can plainly

10

eliminate the second, third, and fifth options under the statute, since the State never contended that a deadly weapon was used in this case, and proof of the "manner whereby great bodily harm, disfigurement or death can be inflicted" is irrelevant since we have found that great bodily injury did occur.

This leaves us with the single remaining issue as to whether the district court should have instructed the jury on option four as a lesser included offense, *i.e.*, whether Frazier *recklessly* caused great bodily harm to Reeves. As noted, recklessly causing great bodily injury is classified as a level 5 felony, one step below knowingly causing great bodily injury.

In the recent case of *State v. Hobbs*, 301 Kan. 203, 210-11, 340 P.3d 1179 (2015), our Supreme Court held that a conviction for knowingly causing great bodily harm under the first theory described above requires proof that a defendant acted while knowing that some type of great bodily harm or disfigurement of another person was reasonably certain to result from the defendant's action. The State is not required to prove that the defendant intended the precise harm suffered by the defendant. It is sufficient that the defendant acted while knowing that any great bodily harm or disfigurement of the victim was reasonably certain to result from the action.

The issue of whether reckless conduct is a lesser included offense of knowing conduct under the aggravated battery statute did not arise in *Hobbs*. However, the decision reached by a panel of this court in *State v. Horne*, No. 111,945, 2015 WL 6832956, at *2-3 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* December 4, 2015, addressed just such an issue. In *Horne*, the defendant was convicted of shooting and causing great bodily harm to another person as part of an aborted drug deal. Though the panel found that the district court had erred by improperly instructing the jury on the term "knowingly," they concluded that a properly instructed jury would not have reached a different verdict.

11

In ruling on the issue of whether a reckless aggravated battery instruction should have been given by the trial judge, the *Horne* court considered both the legal and factual appropriateness of the instruction. Because of the lesser severity levels for reckless conduct under the statute, the panel concluded it was a legally appropriate instruction which could have been given. But the court also determined insufficient facts existed to require the giving of the instruction. 2014 WL 6832956, at *4-5.

Our Supreme Court has held that the trial court must instruct the jury on lesser included offenses where there is some evidence that would reasonably justify a conviction of the lesser included offense. See *Armstrong*, 299 Kan. at 432. This duty to instruct applies even if the evidence is weak, inconclusive, and consists solely of the defendant's testimony. The duty is triggered by the defendant's request for such instructions. See *State v. Maestas*, 298 Kan. 765, Syl. ¶ 6, 772, 316 P.3d 724 (2014).

In *Horne*, the defense requested a reckless aggravated battery instruction which was denied by the district court. In our case, no similar request was made for any lesser included offense other than simple battery. Because of this, our inquiry must be a hybrid one. First we must examine whether the giving of a reckless aggravated battery instruction was factually appropriate. Second, if giving a reckless aggravated battery instruction would have been factually appropriate, we must ascertain whether it was clear error, and that if the instruction had been given, there is a real possibility that a different verdict would have been rendered by the jury.

Frazier points to several portions of the record which he believes would justify the giving of a reckless aggravated battery instruction. As noted above, the jury heard evidence from a mutual friend of Reeves and Frazier that Frazier had called and said he had "beat [Reeves'] ass" and "fucked her up." However, the jury also heard evidence that Frazier said he "didn't know [he] hurt her that much." Frazier further contends that much of the testimony about the extent and duration of Reeves' injuries came from her

unsupported testimony alone, without independent corroboration or medical confirmation of her treatment and prognosis after her initial treatment by Dr. Scott.

Additionally, Frazier points to the fact that the jury asked the judge for a further definition of the term "knowingly," even though that term had been defined in the instructions. Thus, Frazier maintains the record "would have clearly supported a finding that [he] committed battery, but was reckless with regard to great bodily harm."

The State responds that no reasonable juror would view Frazier's actions as reckless rather than knowing. In support, the State points out that K.S.A. 2011 Supp. 21-5202(j) provides:

> "A person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

The State argues that "even taking the evidence in the light most favorable to [Frazier], nothing suggests that his conduct was reckless." In support, the State cites decisions by our Supreme Court that have held a court did not err in failing to instruct on a lesser included offense in first-degree murder prosecutions because the facts did not demonstrate a lesser culpable mental state. See *State v. Harris*, 293 Kan. 798, 803-05, 269 P.3d 820 (2012) (holding instruction on voluntary manslaughter, which required showing that defendant had honest belief deadly force was necessary to defend himself, but that belief was objectively unreasonable, was unnecessary where defendant told police he shot and killed victim because he "'didn't know what else to do,'" which indicated sense of purpose); *State v. Henson*, 287 Kan. 574, 587-89, 197 P.3d 456 (2008) (concluding evidence excluded verdict based upon reckless conduct where defendant approached victim, pointed a gun, and shot him in the back of the head). More on point,

13

the State also cites unpublished decisions of this court that have highlighted the difference between reckless and knowing behaviors in the context of aggravated battery. For example, the State cites *State v. Crutchfield*, No. 89,278, 2004 WL 235428 (Kan. App.) (unpublished opinion), *rev. denied* 278 Kan. 848 (2004). In that case, the defendant testified that he saw an object coming toward the side of his head, which turned out to be a 40-ounce beer bottle. The defendant tried to backhand the object to deflect it but instead accidentally hit the victim's head, knocking her unconscious to the floor. This court held that even if believed, the defendant's testimony did not support an instruction on reckless aggravated battery, reasoning in support:

> "An example of reckless aggravated battery is firing a weapon into the air, without intending to hit anyone, but with complete disregard of the danger. Here, Crutchfield had the right to attempt to deflect an object coming toward his head. The fact that he accidently struck [the victim] in the process could not be viewed as reckless conduct. If the jury believed Crutchfield's testimony, he should have been found not guilty of any charge of battery against [the victim]." 2004 WL 235428, at *2.

See also *State v. Burnett*, No. 99,539, 2009 WL 2595893, at *2 (Kan. App. 2009) (unpublished opinion) (finding no evidence of reckless conduct where victim testified that defendant placed both of his hands around her neck and squeezed, choking her and causing her to pass out, photographs showed bruising around neck, and defendant admitted actions but stated he did so only to defend himself).

As admonished by *Armstrong* and *Maestas*, cited above, we have reviewed the record in full and find Frazier's arguments for a reckless aggravated battery instruction to be without merit for two reasons.

First, in order to convict Frazier of the most serious form of aggravated battery, knowing aggravated battery, the State had to prove that he was "reasonably certain" great bodily harm would result from his assault of Reeves. See K.S.A. 2011 Supp. 21-5202(i)

14

(defining knowingly); *Hobbs*, 301 Kan. at 211. There was overwhelming evidence to factually support such a finding. Reeves asked Frazier to stop beating her because she could not breath and yet he continued to beat her. He attempted to muffle her screams for help. He hit her so hard he broke her eye socket. He fractured her sinus cavity and lacerated her liver with his unrelenting attack. He choked her, wrapped an antenna wire around her neck, and told her he was going to kill her. These facts alone, had she died, would have supported a finding of premeditated murder. See *State v. Lloyd*, 299 Kan. 620, 634, 325 P.3d 1122 (2014) (manual strangulation is strong evidence of premeditation because it provides time for deliberation); *State v. Gunby*, 282 Kan. 39, Syl. ¶ 9, 144 P.3d 647 (2006) ("Death by manual strangulation can be strong evidence of premeditation."); *State v. Brown*, 234 Kan. 969, 972-73, 676 P.2d 757 (1984) (struggle, beating, and prolonged strangulation sufficient to show premeditation). There is no other reason to choke or wrap a wire around someone's throat except to hurt them—badly. Choking is not an accidental or reckless act; it is an intentional and knowing act to cause great bodily harm.

Second, to factually support the lesser included offense of reckless aggravated battery, there would have to be some evidence that Frazier consciously disregarded a substantial and unjustifiable risk that a result would follow and that his disregard amounted to a gross deviation from what a reasonable person would do in the same situation. See K.S.A. 2011 Supp. 21-5202(j). In this case, there was no conscious disregard of a substantial risk that resulted in harm. In fact, Frazier's conduct was the very definition of knowing conduct, which occurs "when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 2011 Supp. 21-5202(i). Reckless conduct has always meant an unintentional act. The fact that the defendant may not have intended the precise harm or result that occurred does not make the act any less intentional and certainly does not demote the behavior to mere reckless conduct. See *State v. Johnson*, 46 Kan. App. 2d 870, 880-81, 265 P.3d 585 (2011); *State v. Kline*, No.

109,900, 2014 WL 5312862, at *16-17 (Kan. App. 2014) (unpublished opinion), *aff'd* 2016 WL 97844 (Kan. App. 2016) (unpublished opinion).

We also reject Frazier's contention that the jury was confused because they requested clarification about the word "knowingly." As the district judge pointed out at the time, jurors ask questions for a variety of reasons. Looking into the minds of jurors is a difficult and dangerous matter, and jury verdicts should not be set aside lightly. In this case, it may be that eleven jurors were trying to make a point to the twelfth juror in order to get a decision, or it may be that one juror was trying to convince the other eleven of the error in their analysis. We have no idea why the question was asked except that at least one person wanted further explanation. The jury was referred back to the instruction that defined knowingly, and no more questions were asked before the verdict was rendered. So, the jury apparently unanimously came to an agreement that Frazier's actions were done knowingly, and we cannot conclude otherwise. See *State v. Rice*, 273 Kan. 870, 873, 46 P.3d 1155 (2002) (juries are presumed to have followed instructions given by trial court).

Finally, even if we were to concede Frazier's point that a reckless battery instruction would be both legally and factually appropriate, a reversal would require us to find that failure to give a reckless aggravated battery instruction was clear error. In order to compel a new trial we would need to have a firm belief there is a real possibility the jury would have rendered a different verdict if the reckless aggravated battery instruction had been given.

Frazier did not argue to the jury that his actions were reckless but rather claimed he did not do it—at all. He did not point to the jailhouse phone call where he said he did not know he had hurt Reeves that badly as evidence that his conduct was reckless. In fact, he did not mention it at all as part of his defense. It was the prosecutor that pointed to this evidence as supporting the State's theory that it did indeed happen and that it was a

16

knowing act. Again, Frazier's defense was that Reeves' testimony and injuries were completely fabricated. We disagree that there was any evidence of reckless conduct, let alone enough that would have supported a jury finding of reckless aggravated battery. Without any evidence of reckless conduct, it is inconceivable that the jury would have returned a different verdict if a reckless aggravated battery instruction was given. Accordingly, even if we were to find that there was a proper factual basis for giving a reckless aggravated battery instruction, we find nothing clearly erroneous about the judge's refusal to give such an instruction.

As his final issue on appeal, Frazier complains about the trial court's refusal to allow him to cross-examine Reeves about a civil lawsuit she filed against him. The State responds that the trial court properly kept that irrelevant evidence out; but even if it was error to exclude it, that error was harmless.

Appellate review of the trial court's exclusion of this evidence involves several steps, each of which has corresponding standards of review. The first step of the analysis requires a determination of whether the evidence was relevant, meaning it has any "tendency in reason to prove any material fact." K.S.A. 60-401(b). This statutory definition of relevance contains two subcomponents: probativeness—the "tendency in reason to prove" component—and materiality. This court reviews a trial court's conclusion that evidence is probative for an abuse of discretion. *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014). The materiality component, on the other hand, requires this court's unlimited review to determine whether "the fact has a legitimate and effective bearing on the decision of the case and is in dispute." 299 Kan. at 348.

Some additional factual background is necessary for adequate review of the trial court's determination that the evidence of Reeves' lawsuit was irrelevant.

17

Prior to cross-examining Reeves, Frazier's counsel asked the trial court's permission to cross-examine her about the fact that she hired a lawyer and was pursuing a civil suit against him, which was apparently related to both the battery and a dispute over their jointly owned property. Frazier maintained that lawsuit was relevant to Reeves' "motivation to tell the things she's told the jury." The State argued the evidence was irrelevant. The trial court agreed with the State.

At the close of Reeves' testimony, Frazier proffered the evidence he wanted to admit. The proffer showed that in October 2012, Reeves filed a still-pending lawsuit. This was long after she gave her recorded statement to the police and testified at Frazier's preliminary hearing. Reeves denied that her filing of the lawsuit had anything to do with the criminal charges against Frazier. Rather, she filed the lawsuit only because her attorney told her she had to in order to avoid losing any right she may have to recover money for her damages and hospital bills and to equitably divide their property. At the close of the proffer, the trial court reaffirmed its ruling that the evidence was irrelevant and, therefore, inadmissible.

On appeal, Frazier argues the trial court erred in finding the evidence irrelevant. In support, he contends the pending civil lawsuit was relevant to Reeves' "ulterior motive and how it related to her credibility." Put another way, he argues the evidence was relevant to prove "Reeves was not a disinterested witness." Thus, he maintains the trial court's "exclusion of this line of questioning was unreasonable and seriously damaged [his] right to confront his accuser."

At the outset, it should be noted that Frazier did not raise below, nor has he briefed his suggestion in passing, that the trial court's ruling on the admissibility of this evidence violated his constitutional right of confrontation of Reeves at trial. Accordingly, that issue is not properly before this court. See *State v. Williams*, 299 Kan. 509, 548-50, 324 P.3d

18

1078 (2014) (declining to address confrontation issues for first time on appeal in absence of contemporaneous objection required under K.S.A. 60-404).

Both below and on appeal, Frazier has limited his argument to relevance, so our inquiry is limited to that issue. In arguing this evidence was relevant, Frazier posits that Reeves knew his conviction in this case could be used to establish her right to recover noneconomic damages up to $250,000 in the civil case given the lower burden of proof. See K.S.A. 2015 Supp. 60-19a02(b)(1); *Radke Oil Co. v. Kansas Dept. of Health & Environment*, 23 Kan. App. 2d 774, 780, 936 P.2d 286 (1997). Thus, Frazier hypothesizes:

> "If a civil suit is pending while the criminal action for the same alleged conduct is ongoing, this provides substantial motivation for a dual complaining witness and civil plaintiff to embellish her testimony and secure a conviction. The civil judgment becomes inevitable without the vagaries of litigation. Further, an incarcerated civil defendant will have more difficulty defending against a lawsuit than a civil defendant that is not incarcerated. All of these factors are potential reasons to exaggerate testimony in the criminal trial."

The State concedes that Reeves' motive to testify was material. However, the State insists Frazier has not shown the trial court abused its discretion in concluding this evidence was not probative of Reeves' motive. In support, the State points out that the circumstances of this case reveal Frazier's argument about Reeves' motive to testify based on her civil lawsuit is little more than bald speculation. In fact, by the time Reeves filed her lawsuit, she had already given a recorded statement to the police and testified at Frazier's preliminary hearing. Her trial testimony about what happened between her and Frazier that day has never varied in a significant manner.

But even if we were to find that it was error to exclude evidence of Reeves' civil lawsuit, the erroneous exclusion of evidence is subject to review for harmless error under

K.S.A. 2011 Supp. 60-261 (court must disregard all errors and defects that do not affect any party's substantial rights). Factors an appellate court can consider in reviewing the erroneous exclusion of evidence for harmless error include: "the importance of the witness' testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the case." *State v. Ultreras*, 296 Kan. 828, Syl. ¶ 11, 295 P.3d 1020 (2013).

We have no problem finding that exclusion of evidence regarding Reeves civil lawsuit was harmless. The evidence against Frazier was overwhelming. He admitted in phone calls that he "beat [Reeves'] ass" and "fucked her up." Frazier indicated in one phone call that he was angry at Reeves over her failure to pay him her share of the market value of their home. The physical evidence was undisputed. Moreover, the trial court did not keep out evidence of the parties' property dispute. Frazier repeatedly referred to this as a motive for Reeves to fabricate her story. But the overwhelming nature of the evidence against him simply failed to support his defense.

Finding that the district judge committed no reversible error in this case, we affirm Frazier's conviction.

Affirmed.

* * *

ATCHESON, J., dissenting: I respectfully dissent. The Wyandotte County District Court deprived Defendant Jeremy Frazier of a fair trial by failing to instruct the jurors on misdemeanor battery as he requested and on lesser degrees of aggravated battery that he did not request. The district court concluded the injuries to Renita Reeves constituted great bodily harm as a matter of law, and that conclusion impermissibly usurped the

20

jurors' role as finders of fact. The majority replicates that error in affirming Frazier's conviction for severity level 4 aggravated battery, the most serious form of that offense criminalized in K.S.A. 2011 Supp. 21-5413. I would reverse and remand for a new trial.

At the risk of belaboring the trial evidence, I briefly outline the salient facts. Frazier and Reeves had lived together for about 5 years and jointly owned a house. Reeves ended the relationship and moved in with her mother. The breakup didn't sit well with Frazier. On October 27, 2011, several months after the split, Frazier called Reeves, ostensibly to get her help with a car he was trying to sell. By then, Reeves apparently had begun seeing someone else. But she and Frazier had not resolved all aspects of their association, particularly what they should do with their house. Reeves told Frazier to come over to her mother's house. When he arrived, Reeves went out to meet him and sat down in the front passenger's seat of the car he was driving.

No independent witnesses saw the actual confrontation between Frazier and Reeves. According to Reeves, Frazier exploded in anger because he concluded she was in a new relationship and viciously attacked her. Frazier neither gave a substantive statement to the police nor testified at trial. The State offered out-of-court statements Frazier made to third parties plainly indicating he physically harmed Reeves. But those statements did not recount his version of what happened. In one, Frazier said he "beat [Reeves'] ass" and "fucked her up." In a recorded telephone call Frazier later made from jail, he said he "didn't know [he] hurt her that much."

Reeves told the jurors Frazier punched her in the head "multiple times," pinned her against the dashboard, and kneed her in the stomach. Reeves testified she told Frazier she couldn't breathe and pleaded with him to stop. They wound up in the back seat, where the assault continued. Reeves testified Frazier wrapped an antenna cord around her neck and shouted, "I'm gonna to kill you." According to Reeves, Frazier then dragged her out of the car and continued to punch and kick her as he attempted to stifle her screams. At

21

some point, Frazier stabbed her with a fork and bit her. Reeves testified that she did not recall losing consciousness during the attack.

Reeves' mother eventually heard screams, came outside, and called the police. Frazier drove off. At trial, Reeves' mother testified Reeves looked "beat up" and had a bloody nose. Reeves told her mother she believed her nose was broken. She was in considerable pain. An ambulance took Reeves to the University of Kansas Medical Center. Dr. Mark Scott, who treated Reeves in the emergency room, told the jurors she had noticeable swelling on the right side of her face, scratch marks on her neck, a bite wound on her hand, and difficulty opening her mouth. Dr. Scott determined Reeves had a laceration to her liver and fractures to a bone around a sinus cavity and to a bone below her right eye. He described the injuries as the result of blunt force trauma consistent with being punched or kicked. Reeves was hospitalized for several days but required no surgery for her injuries. No other physician or healthcare provider testified.

Reeves told the jurors that for a year after the beating, she could not feel anything on the right side of her face and had lost any sense of taste on the right side of her mouth. She said a doctor told her she had suffered nerve damage. According to Reeves, her sense of taste eventually returned but she still had a clicking sound in her jaw when she ate. She also told the jurors she has reduced strength in her hand, and it will sometimes throb or swell from overuse. Finally, Reeves testified that she has otherwise unidentified "sinus problems" a doctor told her are likely permanent.

The district court decided to instruct the jurors only on the most severe form of aggravated battery—the crime the State charged in the information. Frazier requested a jury instruction on misdemeanor battery and objected to the district court's refusal to so instruct the jurors. He did not ask for instructions on any lesser degrees of felony aggravated battery. The district court did not instruct the jurors on any of them.

22

The district court also refused to allow Frazier's lawyer to question Reeves about a civil action she had filed against Frazier to recover damages for her injuries. The civil action remained unresolved when the criminal case was tried. That evidentiary error creates additional problems.

The jurors convicted Frazier of the severity level 4 aggravated battery—the only charge available to them. In due course, the district court sentenced Frazier to a standard guidelines punishment of 71 months in prison followed by postrelease supervision for 36 months.

Because the district court gave no lesser offense instructions, the jurors either had to convict Frazier of the most severe degree of aggravated battery or find him not guilty. Given the evidence, that forced a legally improper choice on the jurors. They should have been allowed to consider a range of lesser degrees of the crime. See K.S.A. 22-3414(3) (district court must instruct on lesser included offenses reasonably supported in the evidence). The failure deprived the jurors of information essential for them to completely and fairly fulfill their duty to find the relevant facts and apply the law to those facts. See *State v. Brown*, 298 Kan. 1040, 1045, 318 P.3d 1005 (2014). That's the crux of the problem. It might well be that a jury adequately informed of the law and the lesser offenses would have convicted Frazier just the same. But the district court had no business narrowing the jurors' options before they started deliberating. And we have no business propping up that mistake afterward.

Conviction of severity level 4 aggravated battery requires jurors to find the victim suffered "great bodily harm." Lesser degrees of the crime, including misdemeanor battery, require only "bodily harm." See K.S.A. 2011 Supp. 21-5413. The Kansas Criminal Code does not define those terms. And there is no clear or especially predictive test in the caselaw to separate the two. Some would say that creates a legal black hole—a

23

place that lacks discernible boundaries and meaningful description. I prefer to think of it as a vast gray area entrusted to the good sense of fairly empaneled jurors.

The Kansas appellate courts have long recognized that jurors should decide whether a victim has suffered either bodily harm (a category that encompasses everything from bruising and scrapes to moderately severe injuries) or great bodily harm. Only in the most extreme circumstances should courts preclude jurors from making that determination. See *State v. Cooper*, 303 Kan. ___, 366 P.3d 232, 237 (2016) (reiterating issue to be factual one for jury and rejecting view that gunshot wound necessarily entails great bodily harm); *State v. Sanders*, 223 Kan. 550, 552, 575 P.2d 533 (1978) (same); *State v. Simmons*, 45 Kan. App. 2d 491, 500-04, 249 P.3d 15 (2011) (detailed discussion of law regarding "bodily harm" and "great bodily harm" for purposes of criminal battery), *aff'd* 295 Kan. 171, 283 P.3d 212 (2012); see also *State v. Kelly*, 262 Kan. 755, Syl. ¶ 2, 942 P.2d 579 (1997) (great bodily harm must be distinguished from "slight . . . or moderate harm"). Few circumstances conclusively amount to bodily harm, save for scrapes and bruises. Fewer still can be treated as great bodily harm as a matter of law.

Here, Reeves undeniably had significant injuries, but they were not so grave as to justify taking the issue of their severity away from the jurors. See, *e.g.*, *State v. Delacruz*, 43 Kan. App. 2d 173, 175, 180-81, 223 P.3d 810 (2010) (trial court erred in failing to instruct on the lesser included offense of simple battery where the evidence showed that Delacruz "punched [his wife] in the face, stomped on her head, sat on her arm, and choked her"); *State v. Curreri*, 42 Kan. App. 2d 460, 462, 466, 213 P.3d 1084 (2009) (jury question whether man who pushed his live-in girlfriend to the floor, got on top of her, and then manually strangled her almost to unconsciousness acted in a manner whereby great bodily harm could have been inflicted, thereby supporting a conviction for aggravated battery rather than simple battery), *rev. denied* 290 Kan. 1097 (2010); *State v. Vessels*, No. 96,421, 2008 WL 1847374, at *4-6 (Kan. App.) (unpublished opinion) (jury should have been instructed on lesser included offenses in aggravated battery prosecution

24

where bail bondsman grabbed and twisted arm of arthritic, 65-year-old woman, breaking one of the bones in her forearm), *rev. denied* 286 Kan. 1185 (2008); *State v. Quinones*, No. 93,848, 2006 WL 995374, at *1-2 (Kan. App. 2006) (unpublished opinion) (jury should have been instructed on lesser included offense of simple battery where evidence showed Quinones punched and kicked a neighbor, breaking his nose and a left cheek bone). In other words, the injuries to Reeves fell within that immense gray area between mere bruising and the extraordinarily severe injuries amounting to great bodily harm as a matter of law. The jurors should have been allowed to decide whether the injuries to Reeves constituted bodily harm—undoubtedly resting at the moderate end of that spectrum—or great bodily harm.

Some lesser degrees of aggravated battery punish a defendant for inflicting bodily harm in a "manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 2011 Supp. 21-5413(b)(1)(B), (b)(2)(B). The manner or mechanism of injury is also a question of fact entrusted to the jurors in a given case. See *Simmons*, 45 Kan. App. 2d at 502; *Curreri*, 42 Kan. App. 2d at 465-66; *State v. Johnson*, No. 103,798, 2012 WL 687060, at *2 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1133 (2013); *State v. Howard*, No. 102,738, 2011 WL 867584, at *3 (2011) (unpublished opinion), *rev. denied* 296 Kan. 1132 (2013). Here, Frazier hit and kicked Reeves multiple times, but the record evidence really sheds no light on how many times. He did not use a deadly weapon; the fork didn't qualify. See *State v. Taylor*, No. 101,224, 2011 WL 2191683, at *4 (Kan. App. 2011) (unpublished opinion) (stabbing victim in chest and neck with knife resulting in only superficial wounds would support instruction on aggravated battery since jury reasonably could find manner of injury might result in great bodily harm). Frazier choked Reeves with the antennae cord. But the evidence indicates she never lost consciousness, at least suggesting a manner inconsistent with great bodily harm or death. See *Howard*, 2011 WL 867584, at *3. Nothing in the record indicates Reeves suffered disfigurement. See *State v. Moore*, 271 Kan. 416, 420-21, 23 P.3d 815 (2001) (scarring from repeatedly applying hot iron to victim constituted disfigurement).

The district court erred in refusing to instruct on those forms of aggravated battery—thus saying there was nothing for reasonable jurors to consider as to the manner of injury.

Under the revisions to the criminal code that went into effect in 2011, some forms of aggravated battery require defendants to "knowingly caus[e]" injury to their victims and other forms require them to "recklessly caus[e]" injury. K.S.A. 2011 Supp. 21-5413. As those terms have been defined in K.S.A. 2011 Supp. 21-5202(i) and K.S.A. 2011 Supp. 21-5202(j), the State must prove defendants have some awareness of the potential consequences or results of their actions in battering their victims. See *State v. Hobbs*, 301 Kan. 203, 211, 340 P.3d 1179 (2015) (To convict a defendant of "knowingly causing" great bodily harm, the State must prove he or she was "reasonably certain" great bodily harm would result from his or her actions.). That culpable mental state or mens rea is also a quintessential jury question. See *State v. Bryan*, 281 Kan. 157, 167, 130 P.3d 85 (2006); *State v. Dubish*, 234 Kan. 708, 717, 675 P.2d 877 (1984). The district court erred in that respect, as well, when it refused to consider any lesser degrees of aggravated battery in this case.[*]

[*]Pertinent here, criminal defendants act "knowingly" when they are "aware [their] conduct is reasonably certain to cause the result." K.S.A. 2011 Supp. 21-5202(i). Criminal defendants act "recklessly" when they "consciously disregard[] a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2011 Supp. 21-5202(j). The definitions focus on a defendant's state of mind regarding an appreciation of the consequences that may result from the charged conduct. Whether the conduct is itself deliberate rather than merely careless is neither central to nor determinative of the requisite state of mind.

Particularly troublesome is the district court's omission of severity level 5 aggravated battery based on a defendant's "recklessly causing great bodily harm to another person" as a lesser included offense. K.S.A. 2011 Supp. 21-5413(b)(2)(A). Even conceding Reeves' injuries constituted great bodily harm as a matter of law (although the degree of harm really should have been for the jurors to decide), the evidence would have

permitted the jurors to conclude Frazier "recklessly caused" that degree of harm, consistent with the definition in K.S.A. 2011 Supp. 21-5202(j). The principal injuries to Reeves were the two broken bones on the right side of her face and the laceration to her liver, all of which were caused by blunt force trauma—punches or kicks from Frazier.

The difference between severity level 4 aggravated battery of which Frazier was convicted and severity level 5 aggravated battery on which the jurors also should have been instructed turns on the defendant's state of mind or mens rea. Considering the two mental states in tandem, I see circumstantial evidence that should have been entrusted to the jurors to assess. It is hard to say that an unquantified number of punches or kicks reflects the sort of conduct that an assailant would indisputably consider "reasonably certain" to cause great bodily harm. It is entirely possible that sort of conduct could as easily entail an indifference or conscious disregard that great bodily harm might result, thus supporting the lesser degree of aggravated battery. Here, for example, a witness attributed to Frazier a statement that he "fucked [Reeves] up," suggesting he recognized he had inflicted substantial harm on her. But the jurors also heard a telephone call from Frazier in which he claimed he did not realize he had hurt Reeves to the degree he did. Those pieces of evidence are significant in trying to discern Frazier's state of mind, and they tend to point toward differing conclusions. The reason we have juries in the first place is to sort out that kind of messy, conflicting evidence. See *State v. Bellinger*, 47 Kan. App. 2d 776, 807, 278 P. 3d 975 (2012) (Atcheson, J., dissenting), *rev. denied* 298 Kan. 1204 (2013).

In rejecting this point, the majority misconstrues the required mental state by incorrectly focusing on whether Frazier's actions were, on the one hand, intentional or deliberate or, on the other hand, careless or accidental. That may have been a distinction of some significance under the criminal code before the governing mental states were revamped in 2011. But the current code focuses not on the character of the actions but on the defendant's appreciation of the likely consequences of the actions. The case authority

27

the majority cites and the State has relied upon predate the code revision and are, as a result, essentially inapposite on this point. The majority's misapprehension forms a substantial part of its justification for affirming the district court. Because that reasoning is suspect, so is the conclusion.

The majority otherwise misconstrues the record in ways favoring the district court's decision on how to instruct the jurors. For example, the majority relies on the "lasting trauma" to Reeves, when the apparent duration of her injuries rested largely on her subjective representations and, thus, was a function of her credibility and lacked medical corroboration. As I discuss later, Reeves' civil action against Frazier could have influenced that aspect of her testimony in particular and should have been presented to the jurors for their consideration. Similarly, the majority makes much of Frazier's "general denial" and closing argument disputing whether he attacked Reeves at all. But the majority disregards two related points. Frazier did argue to the jurors that Reeves' injuries were not as severe as she claimed and did not amount to great bodily harm. And as I have explained, the jurors faced the legally improper choice of either convicting Frazier as charged or acquitting him when they also should have had the option of considering a range of lesser included offenses. That omission substantially neutralized any defense argument based on the degree of injury and manner of harm to Reeves. Had the jurors been properly instructed, the defense argument might have shifted more heavily to those considerations and away from identity—a tough issue to sell in light of the overall evidence, including Frazier's out-of-court admissions.

Finally, the majority tries to churn way more out of Frazier's statement, "I'm gonna kill you," shouted at Reeves as he choked her, than it warrants in giving jury instructions on lesser included offenses. While that evidence certainly should have been carefully considered by the jurors in choosing among lesser degrees of the charged offense, it does not justify the district court's decision to deny the jurors the opportunity to consider those included offenses. The evidence showed that Frazier never choked Reeves to

28

unconsciousness, so it seems, at best, debatable that he would have meant his statement literally. Had Frazier in fact left Reeves unconscious and fled immediately, the statement could have indicated a homicidal intent supporting a charge of attempted murder. But that plainly did not happen. The statement may have been a product of Frazier's rage or a more deliberative design to instill terror in Reeves. That would be consistent with a separate charge of felony criminal threat in violation of K.S.A. 2011 Supp. 21-5415(a)(1). The statement, however, cannot conclusively establish the requisite state of mind necessary to prove Frazier "knowingly caused" great bodily harm to Reeves. The jurors—not the district court and most certainly not this court—had the prerogative to determine Frazier's intent based on all of the trial evidence. In turn, the jurors then would have been in a position to apply their conclusion to the range of offenses encompassed within aggravated battery. The majority's argument improperly usurps the jurors' role as the finders of fact.

Looking at all of the evidence, I believe the district court erred in refusing to give lesser included offense instructions on aggravated battery entailing either bodily harm or great bodily harm and entailing knowing or reckless mental states. And the district court erred in refusing to give an instruction on misdemeanor battery. Because Frazier requested an instruction on misdemeanor battery, the State bears the burden of showing that error to have been harmless. The omission cannot be harmless if there is a reasonable probability the outcome of the trial would have been different had the instruction been given. See *State v. Williams*, 295 Kan. 506, 518, 286 P.3d 195 (2012). The State cannot demonstrate the absence of prejudicial error on that score. In other words, the State has failed to negate that a properly instructed jury reasonably could have returned a verdict of simple battery. That seems especially so given the district court's likely error in excluding relevant evidence bearing directly on Reeves' credibility regarding the extent of her injuries.

29

Because Frazier did not request the instructions on other lesser degrees of aggravated battery, he must show their omission to have been clearly erroneous. See *Williams*, 295 Kan. at 516. That requires the reviewing court be "'firmly convinced that there is a real possibility the jury would have returned a different verdict'" or be "firmly convinced that the jury would have" done so—equivalent statements of the same standard. *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281 (2013); see *State v. Martin*, No. 110,556, 2015 WL 5224697, at *5 (Kan. App. 2015) (unpublished opinion). Frazier has satisfied that more rigorous standard for an instruction on severity level 5 aggravated battery criminalizing recklessly causing great bodily harm.

For those reasons, I would reverse Frazier's conviction and remand for a new trial. I am inclined to say the failure to give lesser included instructions on intentionally or recklessly causing bodily harm in a manner whereby great bodily harm, disfigurement, or death could result also amounted to reversible error. But I don't need to analyze those omissions for clear error. I am dissenting, so as a practical matter that discussion would be hypothetical. If the case actually were being remanded for a new trial and the evidence in the retrial were comparable to what we have in front of us, I believe the district court would be obligated, consistent with K.S.A. 22-3414(3), to instruct the jurors on all forms of misdemeanor battery and aggravated battery, except those requiring use of a deadly weapon or involving physical contact between the defendant and victim without any degree of bodily harm.

Finally, the district court offered a legally insufficient basis for excluding evidence of Reeves' ongoing civil action against Frazier for battery. Reeves' credibility was important here, especially as to the extent of her injuries and, thus, the State's case for great bodily harm. In the civil action, Reeves sought a monetary award from Frazier to compensate for the injuries she suffered at his hands. In the civil case, the greater her injuries, the larger the potential judgment. So Reeves had a financial incentive to maximize and, perhaps, to embellish those injuries. I haven't any particular reason to

assume Reeves was less than candid. But a witness' candor is the province of the jurors, not judges. *State v. Ross*, 280 Kan. 878, 886, 127 P.3d 249 ("'"[P]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."'" [quoting *State v. Knighten*, 260 Kan. 47, 54, 917 P.2d 1324 (1996)]), *cert. denied* 548 U.S. 912 (2006).

A witness should be open to examination about a wide range of possible reasons he or she might unconsciously or deliberately shade pertinent events. *State v. Scott*, 39 Kan. App. 2d 49, 56, 177 P.3d 972 (2008) ("One of the methods or techniques for attacking the credibility of a witness is to show partiality, including bias, motive, and interest in the outcome."). A separate civil action for damages between a witness and a party typically would be the sort of information jurors ought to be permitted to consider in weighing credibility.

Here, the district court excluded any evidence about Reeves' suit against Frazier for damages because it was filed nearly a year after the incident, just before the statute of limitations would have run. In the meantime, Reeves had given a recorded statement to law enforcement officers and had testified at a preliminary hearing about what Frazier had done to her. The district court reasoned that the civil suit, therefore, could not have influenced those statements and those statements were essentially consistent with her testimony at trial. But that more or less misses the point. As a result, the district court failed to consider fully the appropriate legal framework and, thus, abused its discretion. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

The civil suit itself simply represents a direct manifestation of Reeves' intent to obtain money from Frazier for her injuries. That intent provided the motive Reeves might

have had to embellish or overstate. The crux of the matter is whether Reeves entertained that motive when she gave her accounts to the police and later in court. If Reeves had already decided to sue Frazier by the time she spoke to the police, her version of the events would be open to question for that reason. The timing of the filing of the civil action does not, in and of itself, answer that credibility question. Likewise, Reeves gave her statement to the police and testified at the preliminary examination well before the trial. So any descriptions she gave then about the ongoing effects of her injuries don't directly support the veracity of her later trial testimony about any continuing harm.

It seems to me Frazier should have been allowed to explore the issue. Had the exclusion of the civil suit been the only trial error, I don't know that it would have been sufficiently prejudicial to warrant reversal. I defer any definite conclusion. But if the case were otherwise being remanded, the district court ought to revisit the issue.

In the end, the district court short-circuited the jurors' role in making findings of fact and then applying those facts in light of the appropriate legal principles to reach a just verdict. The failure to instruct the jurors on lesser included forms of aggravated battery and simple battery in this case deprived Frazier of a fair trial. I would reverse and remand for a new trial.